IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 28, 2020 Session

## STATE OF TENNESSEE v. FERDERIC LAMONT BYRD

**Appeal from the Criminal Court for Knox County**
**No. 112870   G. Scott Green, Judge**

_____

### No. E2019-00850-CCA-R3-CD

_____

Following the denial of a suppression motion, the defendant, Ferderic Lamont Byrd, pled guilty to attempted possession of less than 15 grams of a Schedule I controlled substance with intent to sell. As a condition of his plea agreement, the defendant reserved the right to appeal a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A), challenging the evidence obtained as a result of the warrantless traffic stop of the vehicle he was driving. Upon our review, we find no error in the denial of the motion and affirm the judgement of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Sherif Guindi, Knoxville, Tennessee, for the appellant, Ferderic Lamont Byrd.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Charme P. Allen, District Attorney General; and Molly T. Martin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On August 24, 2017, the defendant was stopped for speeding on Interstate 40 in Knoxville, Tennessee. A subsequent search of the vehicle revealed the defendant possessed marijuana and a mix of heroin and fentanyl. For this conduct, a Knox County grand jury indicted the defendant for possession with intent to sell less than 15 grams of a Schedule I controlled substance (Count 1), possession with intent to deliver less than 15 grams of a Schedule I controlled substance (Count 2), tampering with physical evidence

(Count 3), simple possession of a Schedule VI controlled substance (Count 4), and speeding (Count 5). The defendant filed a motion to suppress all the evidence obtained pursuant to the warrantless traffic stop. Following the denial of his motion to suppress, the defendant pleaded guilty to Count 1, as amended to attempted possession of less than 15 grams of a Schedule I controlled substance with intent to sell. However, as part of the guilty plea, the defendant reserved a certified question of law challenging the denial of his motion to suppress.

At the suppression hearing, Officers Jeremy Montgomery and William Barnes of the Knox County Sheriff's Department testified. On the afternoon of August 24, 2017, Officer Montgomery, who was working undercover for the narcotics division, Officer Barnes, and several other officers were at a Super 8 motel detaining a suspect in an unrelated drug investigation. While waiting for a warrant to search the suspect's motel room, Officer Montgomery noticed the defendant leave his motel room, drive away in a vehicle, and return to his room about five minutes later. After the defendant repeated this sequence three to four times, Officer Montgomery stated, "I wonder what [the defendant is] doing?" The detained suspect replied, "[l]eave him alone, he just -- he's a local, he lives here." Officer Montgomery became suspicious the defendant was an accomplice of the detained suspect; therefore, when the defendant left his motel room again, Officer Montgomery and Officer Barnes, who were driving separate vehicles, followed the defendant to the interstate.

Officer Montgomery testified the defendant was driving the speed limit when they initially started following him. At some point, Officer Montgomery briefly exited the interstate, and Officer Barnes changed lanes and sped up in order to get in front of the defendant. Moments later, Officer Barnes called Officer Montgomery and stated, "[the defendant is] speeding now. He's gaining on me." Officer Montgomery returned to the interstate and regained his position behind the defendant. Because his undercover vehicle was not equipped with a radar detector, Officer Montgomery used a "pacing" technique by matching his speed to the defendant's speed. In doing so, he detected the defendant's speed at 65 miles per hour in a 55 mile per hour speed zone.

Officer Montgomery activated his emergency sirens and stopped the defendant for speeding. Officer Barnes, a canine officer at that time, also stopped and stood by with his dog. As Officer Montgomery approached the passenger side window, he immediately detected the odor of marijuana. He asked the defendant and his passenger to exit the vehicle and requested their identifications. He noticed the defendant had a Michigan

driver's license.[1]  Officer Montgomery asked the defendant and the passenger if they had any marijuana in the vehicle, but they both denied there were drugs in the vehicle.  He then asked for consent to search the vehicle.  The defendant refused to consent to a search.

After the defendant denied consent to search, Officer Barnes approached the vehicle with his dog.  Upon the dog alerting at the vehicle, Officer Montgomery searched the vehicle, wherein he found "two marijuana cigarettes that had been burned" inside a cigarette pack near the center console.  Both the defendant and the passenger denied ownership of the marijuana.  The defendant told Officer Montgomery he had been placed on probation earlier that morning after pleading guilty to a separate offense.  Fearing the defendant was a flight risk because he was from Michigan and because he was on probation, Officer Montgomery arrested the defendant for possession of marijuana.  During a pat down, Officer Montgomery noticed the defendant "kept clenching his buttocks together and wouldn't allow me to search that area."   When Officer Montgomery asked the defendant to remove what he was concealing, the defendant responded, "[i]f I take it out, you won't take me to jail?"  Officer Montgomery told the defendant, "[i]t depends on what it is, to be honest with you."  The defendant did not remove what he was concealing.

After placing the defendant under arrest, Officer Montgomery called for Officer Bradshaw to bring a police van to the scene to transport the defendant to jail.  When Officer Bradshaw arrived, Officer Montgomery instructed him to have the defendant strip searched at the jail because he believed the defendant was concealing narcotics.  However, shortly after the defendant entered the back of the van, Officer Bradshaw called Officer Montgomery back to the van because the defendant had "spit all this stuff out the vent holes."  Officer Montgomery opened the back doors of the van and saw individual bags of what appeared to be heroin falling out of the van onto the roadway and a bag of marijuana inside the van.  Officer Montgomery also noticed the defendant was showing signs of overdosing, so he called an ambulance to the scene.  Officer Montgomery confiscated the drugs and sent them to the Tennessee Bureau of Investigation's crime lab for testing.  The test results revealed the drugs were a mix of heroin and fentanyl.

On cross-examination, Officer Montgomery was asked about his training on pacing vehicles.  He testified he received training on pacing as part of his drug interdiction field training.  However, he did not receive "any kind of paperwork or

---

[1] According to Officer Montgomery's testimony at the defendant's probation revocation hearing, the vehicle the defendant was driving had a Tennessee license plate and was not registered to the defendant.

certification" from his training. When asked to describe the proper pacing method, Officer Montgomery stated, "follow [the vehicle] for approximately a mile at the same speed, make sure [the] speedometer doesn't fluctuate speeds, and try to maintain the same distance throughout the entire time." Officer Montgomery acknowledged he did not know how long he paced the defendant before stopping him. He estimated the distance from the point he returned to the interstate behind the defendant to the point where he stopped the defendant was two miles. He also acknowledged he did not know when his speedometer was last calibrated or how often speedometers are usually calibrated. Officer Montgomery did note, however, that his vehicle was one or two years old and that it "had the certified calibration on the dash."

Officer Barnes testified he noticed the defendant speeding up behind him shortly after Officer Montgomery exited the interstate. Officer Barnes stated he was driving 55 miles per hour when he noticed the defendant speeding up, but he was not sure how fast the defendant was driving. After Officer Montgomery pulled the defendant over, Officer Barnes stopped his vehicle behind Officer Montgomery's vehicle and stood by with his canine unit. When Officer Barnes walked his dog around the vehicle, the dog alerted at the passenger side door.

After its review, the trial court denied the motion to suppress, finding:

> The uncontradicted proof in this record is that [the defendant]'s vehicle was paced doing 65 [miles per hour] in a 55 [mile per hour speed zone]. There is no requirement that [the officers] have to use radar or any other type of electronic equipment. The vehicle was paced, it was stopped. That's coupled with the fact that the officers had observed [the defendant] acting suspiciously prior to this, which alerted their attention and suspicion of him back at the motel, . . .
> . . . .
> . . . Once the defendant was pulled over [the officers] clearly had the right when they smelled burnt marijuana before or after the dog alerted to search the vehicle. They didn't search the vehicle, they went a step further and had a trained police dog which alerted on the vehicle, marijuana was found, which gave them the right to arrest [the defendant], and thereafter the heroin[] was located when he was placed in the [police van].

The defendant subsequently entered a guilty plea to Count 1 of the indictment, as amended to attempted possession of less than 15 grams of a Schedule I controlled substance with intent to sell, for which he agreed to a sentence of ten years' incarceration as a Range II offender and a $2,000.00 fine. The remaining four counts were dismissed by agreement. The trial court entered an order accepting the defendant's guilty plea

- 4 -

which reserved the following certified question of law pursuant to Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure:

> Whether the trial [c]ourt erred in not suppressing all evidence of drugs, or of tampering therewith, without which the State could not proceed against the [d]efendant for any drug charges or tampering with evidence charges, where the stop of the [d]efendant's vehicle which led to the discovery of the drugs and to the [d]efendant's tampering therewith was illegal pursuant to the Fourth and Fifth Amendments to the U.S. Constitution and Article I Sections 7 and 9 of the Tennessee Constitution and any applicable caselaw, due to the fact that such stop was based only on the police officers' observation of, and inquiry into, the [d]efendant's activities of coming and going at a hotel where their pursuit of the [d]efendant began and on the officers' determination that the [d]efendant had violated the State's speeding law by using an inadequate method to determine the [d]efendant's speed, none of which, alone or in combination with the others, gave the officers a legal basis under which to stop the [d]efendant's vehicle?

Upon entrance of the order, the defendant timely appealed to this Court.

### *Analysis*

On appeal, the defendant contends the officers lacked probable cause to stop him. Specifically, the defendant challenges the credibility of Officer Montgomery's testimony and argues Officer Montgomery did not have probable cause to believe the defendant was speeding. The State responds that the trial court found Officer Montgomery credible and that Officer Montgomery had probable cause to stop the defendant for speeding. Upon our review of the record and applicable law, we affirm the decision of the trial court.

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolutions of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Accordingly, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* Appellate courts conduct a de novo review of questions of law and the trial court's application of law to facts. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). As the prevailing party, the State is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23.

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee freedom from unreasonable searches and seizures. These guarantees exist to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). A search and seizure conducted under a valid search warrant is presumptively reasonable, but a warrantless search is presumptively unreasonable and the evidence discovered is subject to suppression unless the State demonstrates the search or seizure was conducted pursuant to an exception to the warrant requirement. *State v. McCormick*, 494 S.W.3d 673, 678 (Tenn. 2016) (internal citations omitted).

When a police officer initiates a traffic stop, effectively "seizing" an individual, the individual's constitutional rights against unreasonable searches and seizures are implicated. *State v. Smith*, 484 S.W.3d 393, 400 (Tenn. 2016) (citing *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993)). In Tennessee, a traffic stop is deemed constitutional if an officer has probable cause that a traffic violation has occurred. *State v. Andrew Quinn*, No. M2013-01683-CCA-R3-CD, 2014 WL 2000666, at *2 (Tenn. Crim. App. May 14, 2014). Though not technically defined, "probable cause exists when 'at the time of the [stop], the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense.'" *Smith*, 484 S.W.3d at 401 (quoting *State v. Dotson*, 450 S.W.3d 1, 50 (Tenn. 2014)). Further, "probable cause justifies a traffic stop under Article I, Section 7 of the Tennessee Constitution without regard to the subjective motivations of police officers." *State v. Vineyard*, 958 S.W.2d 730, 736 (Tenn. 1997).

## A. Credibility of Officer Montgomery

The defendant argues the evidence preponderates against the trial court's finding that Officer Montgomery's testimony was credible. In support of his argument, the defendant points to a discrepancy between Officer Montgomery's testimony at the motion to suppress hearing and his prior testimony at the defendant's November 8, 2017 probation revocation hearing. At the probation revocation hearing, Officer Montgomery testified he "maintain[ed] visual contact on [the defendant] the entire time;" whereas, at the suppression hearing, he stated he briefly exited the interstate until Officer Barnes called to inform him the defendant was speeding. When the defendant highlighted this discrepancy at his guilty plea submission hearing, the trial court expressly stated it found Officer Montgomery's testimony credible. As noted above, all questions involving the credibility of witnesses are resolved by the trier of fact. *Odom*, 928 S.W.2d at 23. Accordingly, this Court will not reevaluate the trial court's determinations regarding the credibility of witnesses. *See id.*

*B. Probable Cause*

The defendant argues Officer Montgomery lacked probable cause to stop his vehicle. First, we note that the defendant suggests Officer Montgomery's observations of the defendant at the motel did not give him reasonable suspicion the defendant had committed, or was about to commit, a criminal offense. However, while the defendant's behavior at the motel prompted the officers' initial suspicion of the defendant, the record clearly shows Officer Montgomery decided to stop the defendant based on the defendant's speeding. And, to the extent the defendant suggests Officer Montgomery lacked reasonable suspicion to follow him on the interstate, the defendant's argument is without merit. An officer's customary, short-term pursuit of a suspicious automobile driver from a public vantage point is part of the officer's routine investigative function. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 23 (1968) ("It would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores . . . to have failed to investigate [possible theft activity] further."). Additionally, even if the traffic stop was based, in part, on other motives, such as a narcotics search as a pretext for the stop, the stop does not violate the constitution if there is a valid reason for the stop. *Whren v. United States*, 517 U.S. 806, 813 (1996); *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). Therefore, the crux of this case is not whether the defendant's activity at the motel justified the stop, but rather, whether Officer Montgomery was justified in stopping the defendant for speeding. *See Terry*, 392 U.S. at 23.

The defendant argues Officer Montgomery did not have probable cause to believe the defendant was speeding. Specifically, he asserts that Officer Montgomery: did not use a radar detector to determine the defendant's speed, did not have certification to prove he had been trained to pace a vehicle, did not know how long he paced the defendant, and had not recalibrated his speedometer. The State contends Officer Montgomery's pacing of the defendant's vehicle was sufficient to give him probable cause to stop the defendant. We agree with the State.

Officer Montgomery testified he followed the defendant's vehicle at a consistent distance and, based on his speedometer, both vehicles were traveling 65 miles per hour in a 55 mile per hour speed zone. Officer Montgomery did not know when his speedometer had last been calibrated or the exact distance at which he paced the defendant's vehicle. However, he stated he was trained in pacing, there was a certification of calibration on his vehicle's dash, and the distance from which he returned to the interstate to where he stopped the defendant was approximately two miles. This Court has held that an officer "may properly testify as to the speed with which a suspect is driving based on his or her visual observation of the speed that it took to keep pace with the suspect's vehicle." *State v. Stacey Wayne Creekmore*, No. E2008-000120CCA-R3-CD, 2009 WL 2567771, at *8

(Tenn. Crim. App. Aug. 19, 2009), *perm. app. denied* (Tenn. Feb. 22, 2010) (quoting *State v. Michael D. Boon*, No. E2006-02320-CCA-R3-CD, 2007 WL 4245040, at *4 (Tenn. Crim. App. Dec. 4, 2007)). In doing so, the officer is not required to provide proof concerning when the speedometer was calibrated. *See Michael D. Boon*, 2007 WL 4245040, at *4. The evidence does not preponderate against the trial court's finding that Officer Montgomery had probable cause to stop the defendant for speeding and that the evidence was obtained as a result of a lawful traffic stop. Accordingly, we affirm the trial court's denial of the defendant's motion to suppress.

### *Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE